FILED
CLERK

3:49 pm, Sep 29, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
In Re THE HAIN CELESTIAL GROUP INC.
SECURITIES LITIGATION

ORDER ADOPTING
REPORT & RECOMMENDATION
16-CV-4581 (JS)(LGD)

--------------------------------x

Appearances

For Lead Plaintiff:    Carol C. Villegas, Esq.
Rosewood Funeral       Christine M. Fox, Esq.
Home[1]                James M. Fee, Esq.
                       LABATON SUCHAROW LLP
                       140 Broadway
                       New York, New York  10005

                       Brian Schall, Esq.
                       THE SCHALL LAW FIRM
                       1880 Century Park East, Suite 404
                       Los Angeles, California  90067

For Lead Plaintiff:    Robert V. Prongay, Esq.
Salamon Gimpel[2]      Leannae Heine Solish, Esq.
                       GLANCY PRONGAY & MURRAY LLP
                       1925 Century Park East, Suite 2100
                       Los Angeles, California  90067

For Defendants:        John M. Hillerbrecht, Esq.
                       Jeffrey D. Rotenberg, Esq.
                       Marc A. Silverman, Esq.
                       DLA PIPER LLP (US)
                       1251 Avenue of the Americas
                       New York, New York  10020

**SEYBERT, District Judge:**

        Before the Court is the Report and Recommendation ("R&R"

or "Report") of Honorable Lee G. Dunst recommending that the

---

[1] Counsel for Plaintiff Rosewood Funeral Home are also Co-Lead
Counsel for the Class.

[2] Counsel for Plaintiff Salamon Gimpel are also Co-Lead Counsel
for the Class.

dismissal motions[3] of Defendants The Hain Celestial Group, Inc. ("Hain" or "the Company"), and of Irwin D. Simon ("Simon"), Pasquale Conte ("Conte"), John Carroll ("Carroll"), and Stephen J. Smith ("Smith", and together with Simon, Conte, and Carroll, the "Individual Defendants") (collectively, the "Defendants") be granted and that the Second Amended Consolidated Class Action Complaint ("SAC") (ECF No. 110) of Lead Plaintiffs Rosewood Funeral Home and Salomon Gimpel (the "Plaintiffs") be dismissed with prejudice. (See R&R, ECF No. 142.[4]) Plaintiffs object to Magistrate Judge Dunst's recommendations (see Objection (hereafter, "Objection" or "Obj."), ECF No. 144), to which Defendants have responded (see Response, ECF No. 145). For the reasons which follow, the Objections are OVERRULED, the R&R is ADOPTED as discussed herein, and the Dismissal Motions are GRANTED.

<u>BACKGROUND</u>

This federal securities class action asserting violations of the Securities Exchange Act (the "Act") is based upon Plaintiffs' allegations that, by their false and misleading

---

[3] The dismissal motions of Hain (ECF No. 113) and the Individual Defendants (ECF No. 116) are addressed together; hereafter, they shall be referred to as the "Dismissal Motions". (See also Hain Support Memo, ECF No. 114; Hain Reply, ECF No. 120; Ind. Defs. Support Memo, ECF No. 117; Ind. Defs. Reply, ECF No. 121; Suppl. Support Memo, ECF No. 134; Opp'n re: Hain, ECF No. 118; Opp'n re: Ind. Defs., ECF No. 119; Suppl. Opp'n, ECF No. 136.)

[4] The Court assumes the parties' familiarity with the terms of art defined in the R&R, which are adopted herein.

statements and omissions, the Defendants purposely concealed the Company's declining business due to new competitors in the healthy food and personal care products market, which the Company had previously dominated.   As the Second Circuit summarized it, Plaintiffs' theory of the case is: "Defendants made statements attributing Hain's high sales volume to strong consumer demand, while omitting to state that increased competition had weakened consumer demand and that Hain's high sales volume was achieved in significant part by the offer of unsustainable channel stuffing incentives." In re Hain Celestial Grp., Inc. Sec. Litig., 20 F.4th 131, 137 (2d Cir. 2021). (See also Obj. at 6.)   The Court presumes the parties' familiarity with both the underlying factual background and extensive procedural background of this case. Indeed, in the absence of any objections to the Magistrate Judge's recitation of the Factual Background (see R&R at 1-24) and the Procedural History of the case (see id. at 24-28), which the Court finds to be accurate, thorough, and clear of error, said Factual Background and Procedural History are adopted in their entirety and incorporated herein by reference.   See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) (where no party challenges magistrate judge's recitation of factual and procedural backgrounds of the case, upon clear error review, adopting and incorporating same into court's order).

For ease of reference, the Court notes the following. First, only two causes of action remain: Plaintiffs' first cause of action alleging Defendants' violations of Section 10(b) of the Act and Rule 10b-5(b) promulgated thereunder (hereafter, "Count I" or the "Rule 10(b) Claim"); and Plaintiffs' corresponding third cause of action alleging the Individual Defendants violated Section 20(a) of the Act (hereafter, "Count III" or the "Section 20(a) Claim"). Second, Defendants' Dismissal Motions are before this Court upon remand by the Second Circuit "for reconsideration of Defendants' motion to dismiss the Second Amended Complaint," with this Court to "consider <u>afresh</u> whether the [SAC] adequately stated a claim under Rule 10b-5(b)" and to "reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity" because "the strength of circumstantial allegations required to plead scienter varies depending on whether there are also allegations of motive and opportunity on the part of corporate officers to commit fraud." <u>Hain Celestial</u>, 20 F.4th at 138 (emphasis added) (citing <u>ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d 187, 198-99 (2d Cir. 2002)).

DISCUSSION

I.    Applicable Law[5]

      A. Rule 72(b)

        A district court "may accept, reject, or modify, in whole
or in part, the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).
Any portion of such a report and recommendation to which a timely
objection has been made is reviewed de novo.  See 28 U.S.C.
§ 636(b)(1); FED. R. CIV. P. 72(b)(3).  "Objections to a report and
recommendation must be 'specific and are to address only those
portions of the proposed findings to which the party objects.'"
Fossil Grp. Inc. v. Angel Seller, LLC, No. 20-CV-2441, 2021 WL
4520030, at *2 (E.D.N.Y., Oct. 4, 2021) (quoting Phillips v. Reed
Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (cleaned up)).
General objections, or "objections that are merely perfunctory
responses argued in an attempt to engage the district court in a
rehashing of the same arguments set forth in the original papers
will not suffice to invoke de novo review."  Owusu v. N.Y.S. Ins.,

_____

[5] The Court adopts the legal standards stated by Magistrate Judge
Dunst in his Report as to: (1) a Rule 12(b)(6) dismissal motion
(see R&R at 28-29); (2) the applicable pleading requirements under
Rule 9(b) of the Federal Rules of Civil Procedure and under the
PSLRA (see id. at 29); (3) making out a claim under Rule 10b-5(b)
(see id.); and (4) stating a Section 20(a) claim under the Act
(see id. at 29-30), to which no objections have been raised, which
are not clearly erroneous, and which are incorporated herein by
reference.

655 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2009) (quotations, alterations and citation omitted); see also Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), aff'd sub nom Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir. Nov. 6, 2014) ("[W]hen a party makes only conclusory or general objections [] the Court will review the Report strictly for clear error.[] Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (cleaned up)).  Any portion of a report and recommendation to which no specific timely objection is made, or to which only general, conclusory or perfunctory objections are made, is reviewed only for clear error. Owusu, 655 F. Supp. 2d at 312-13; see also Bassett v. Elec. Arts, Inc., 93 F. Supp. 3d 95, 100-01 (E.D.N.Y. 2015).

B. Rule 10b-5(b) Claims[6]

Rule 10b-5(b) provides that, in connection with the purchase or sale of any security, it is "unlawful for any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To support a claim under that rule, a plaintiff must plead: (1) a material misrepresentation or omission (i.e., materiality and falsity), (2) scienter, (3) a connection between the misrepresentation or omission and the purchase

---

[6]  Provided here merely for the convenience of the reader. (See supra note 5.)

> or sale of a security, (4) reliance on the
> misrepresentation or omission, (5) economic
> loss, and (6) loss causation. See, e.g., Noto
> v. 22nd Century Grp., Inc., 35 F.4th 95, 102
> (2d Cir. 2022). [Further], "[t]he first two
> elements must be pled with heightened
> specificity pursuant to the Private Securities
> Litigation Reform Act of 1995 and Federal Rule
> of Civil Procedure 9(b)." Id.

(R&R at 29 (second set of brackets added).)

II. <u>Application</u>

   A. <u>The R&R</u>

      Cognizant of the Circuit Court's directives, in making

his Report, Magistrate Judge Dunst proceeded to consider as if for

the first time Plaintiffs' SAC. Upon that "afresh" consideration,

the Magistrate Judge made the following findings and

recommendations.

      1. <u>As to Count I</u>

         a. <u>Abandoned Portion of the Claim</u>

      Initially, "to the extent [Count I] challenges Hain's

financial results, the reported methods of calculating them, their

compliance with SOX, and their compliance with GAAP," the

Magistrate Judge found Plaintiffs abandoned those claims;

therefore, he recommends they be dismissed. (R&R at 31.)


      [Remainder of page intentionally left blank.]

b. The Attribution Statements Are Not Actionable

Magistrate Judge Dunst found the Attribution Statements,[7] reviewed in context, were not puffery and, therefore, "trigger[ed] a duty for Hain to disclose any information necessary to make them not misleading."  (R&R at 32-33 (footnote omitted).) In making his recommendation, the Magistrate Judge rejected the Company's reliance on the Circuit Court's Boca Raton decision (id. at 34-37 (discussing Boca Raton Firefighter's and Police Pension Fund v. Bahash, 506 F. App'x 32 (2d Cir. 2012)), since other "cases make clear[ that,] because Defendants 'put the sources of [Hain's] revenue at issue . . . [,] the alleged failure to disclose the true sources of such revenue could give rise to liability under Section 10(b).'"  (Id. (quoting In re Van der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005); further citation omitted) (first and third set of brackets added).)

Then, as to Plaintiffs' "challenges [to] the Company's statements as materially false or omissive for failing to disclose that Hain relied on 'unsustainable practices' to generate sales and/or that Hain lacked adequate accounting controls," the

---

[7]  For convenience, the Court notes, the Attribution Statements where "statements in Hain's SEC filings between November 2013 and May 2016" that attributed the Company's financial results to various causes, i.e.: "strong brand contribution;" "expanded distribution;" the "strong demand" and "momentum" for organic and natural products; Hain's "diverse portfolio" of brands; and/or "solid execution of [Hain's] operational initiatives".  (R&R at 31.)

Magistrate Judge found Plaintiffs failed to plead an actionable misstatement or omission.  (R&R at 38.)  Regarding the "unsustainable practices" branch of the recommendation, Magistrate Judge Dunst stated two ground for finding the relevant statements, as pled, were not actionable:  (a) as to Plaintiffs' contention that the Company offered its customers an absolute right of return, Plaintiffs misplaced their reliance on CWs to support this claim; the Magistrate Judge found the CWs' statements to be "too conclusory and generic to support an allegation that Hain relied on the right of return as alleged in the SAC" (R&R at 39-40; see also id. at n.18); and (b) the Company disclosed other offered sales incentives and promotions, obviating any further need for disclosure (see id. at 41-42).  Regarding the accounting controls branch of the recommendation, Magistrate Judge Dunst rejected Plaintiffs' reliance on the SEC Order, finding (c) the SOX Statements were nonactionable opinion statements of management since (i) Plaintiffs did not plead the Company failed to evaluate its internal controls (see R&R at 43-44), and (ii) the SEC Order did not indicate that the Individual Defendants contemporaneously knew of any deficiencies in the Company's internal controls when they signed the SOX certificates (see id. at 44-45); and (d) contrary to Plaintiffs' allegations of falseness and misleadingness based upon (i) the Company's November 2016 disclosure that the Audit Committee's investigation found no

evidence of intentional wrongdoing regarding the Company's accounting practices, and (ii) Simon's related comments regarding the Company's commitment to both the transparency of its financial reporting and the strengthening of its internal controls, such allegations were undermined by and not, as Plaintiffs argued, supported by the SEC Order (see id. at 45-46).

### c. Plaintiffs Fail to Plead Scienter

As to the scienter element of Plaintiffs' Rule 10(b) Claim, the Magistrate Judge found Plaintiffs failed to plead that claim in accordance with the applicable heightened pleading standards. (See generally R&R at 47 ("A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)).) In making his scienter findings, Magistrate Judge Dunst examined Plaintiffs' alleged facts first as to the Individual Defendants and then as to the Company. The Individual Defendants' scienter finding was further broken down into three subcategories: (a) whether the Individual Defendants had both motive and opportunity to commit the alleged fraud (hereafter, the "Motive & Opportunity Prong") (see R&R at 47-54); (b) whether there was strong circumstantial evidence of conscious misbehavior or recklessness by the Individual Defendants (hereafter, the "Misbehavior or Recklessness

Prong") (see id. at 54-65); and (c) a collective evaluation of the proffered bases for finding scienter (hereafter, the "Collective Evaluation Prong") (see id. at 65).

### (i)  Motive & Opportunity Prong

More particularly to the Motive & Opportunity Prong, which requires allegations showing the Individual Defendants benefitted in some concrete and personal way from the purported fraud (see R&R at 47 (quoting ECA, 553 F.3d at 198; further citation omitted), the Magistrate Judge found unpersuasive Plaintiffs' reliance upon the Individual Defendants' (a) stock sales, (b) compensation and bonuses, and (c) use of Company stock in certain acquisitions.  (See id. at 47-48.)

As to Stock Sales:  Scienter may be shown "when an insider makes a misrepresentation to sell shares at a profit." (R&R at 48 (citing ECA, 553 F.3d at 198).)  However, the sale must be unusual or suspicious, and courts consider factors such as "the amount of profit from the sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling."  City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp., 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (further citation omitted) (quoted in R&R at 48).  Further, the timing of insider stock sales may also be a relevant factor.  (See R&R at 48 (quoting Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011)).)  Against that backdrop, Magistrate Judge Dunst found:

Plaintiffs' SAC did not identify the profits realized by Carroll or Simon from their respective stock sales, undermining an inference of motive and opportunity (see id. at 48-49); the timing of Carroll's and Simon's stock sales were each well outside the first allegedly negative disclosure in January 2016 and before the end of the Class Period, undermining any inference of scienter (see id. at 49); and, there are no allegations that the other Individual Defendants, Smith and Conte, or any other insiders, made suspicious stock sales during the Class Period, undermining a strong inference of scienter (see id. at 49-50).  Yet, as to the number and percentage of shares sold by Carroll and Simon, the Magistrate Judge accepted "Plaintiffs' calculations as true and assume[d] (without deciding) that this factor supports an inference of scienter." (Id. at 50.)  Nonetheless, when viewed collectively Magistrate Judge Dunst found "Plaintiffs' 'motive and opportunity' allegations fail[ed] to raise an inference of scienter as compelling as the competing non-fraudulent inference." (Id.)  Thus, "even when insider stock sales are substantial," because Plaintiffs "fail[ed] to plead (1) profits from the challenged sales, (2) that any challenged sales occurred close in time to corrective disclosures or the end of the [C]lass [P]eriod, and (3) that more than two executives allegedly engaged in unusual or suspicious sales," they "have not sufficiently alleged that

Carroll and Simon's stock sales reflect motive sufficient to establish their scienter."  (R&R at 51.)

As to Bonuses:  Magistrate Judge Dunst observed that because virtually all corporate insiders share the desire for an increase in stock prices to improve their executive compensation, the yearning for such an increase does not support scienter.  (See R&R at 52 (citing S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009)).)  Thus, he found Plaintiffs' allegations in this regard insufficient to establish motive.  (See id. (quoting Lipow v. Net1 UEPS Techs., Inc., 131 F. Supp. 3d 144, 160 (S.D.N.Y. 2015)).)

As to Using Company Stock for Acquisitions:  Recognizing that the inflation of stock prices may inure to the benefit of stockholders in the acquisition context, Magistrate Judge Dunst further acknowledged that using artificially inflated stocks may, in certain situations, be sufficient to establish scienter, but that "[t]he requisite showing requires 'extremely contextual' allegations demonstrating 'a unique connection between the [alleged] fraud and the acquisition.'"  (R&R at 52-53 (quoting ECA, 553 F.3d at 201 n.6).)  The Magistrate Judge found Plaintiffs' allegations in this regard to be conclusory.  (See id. at 53.)  Moreover, the time between the acquisitions and the first alleged corrective disclosure was too attenuated, and more so as to the end of the Class Period.  (See id.)  Similarly, "Plaintiffs offer

nothing to demonstrate that Defendants made material misstatements or omissions to inflate Company stock for any of the acquisitions." (Id. at 53-54.)

### (ii) Misbehavior or Recklessness Prong

Continuing, and specifically to the Misbehavior or Recklessness Prong, Magistrate Judge Dunst framed his analysis by stating Plaintiff is also seeking "to establish scienter through circumstantial evidence of recklessness, which requires 'a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care.'" (R&R at 54 (quoting SEC v. Sourlis, 851 F.3d 139, 144 (2d Cir. 2016); further citation omitted).) Of the four methods by which a plaintiff can show a strong inference of the requisite recklessness, the Magistrate Judge examined Plaintiffs' theory, i.e., that Defendants knew facts or had access to information suggesting their public statements were not accurate. (See id. at 54-55.) He further explained that "[b]ecause Plaintiffs . . . have not shown motive (even taking the motive allegations collectively), "the circumstantial evidence of conscious misbehavior must be correspondingly greater." (Id. at 55 (quoting Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibbs Co., 28 F.4th 343, 355 (2d Cir. 2022)).) Magistrate Judge Dunst proceeded to analyze each of the five bases Plaintiffs alleged as scienter of known but undisclosed

information, to wit: (a) an absolute right-to-return; (b) the Company's reliance on sales incentives and promotions; (c) the SOC certifications and internal controls; (d) personnel changes; and (e) access to reports and core U.S. business.

As to an Absolute Right-of-Return:  In his Report, Magistrate Judge Dunst states: "The SAC's allegations regarding the right to return rely entirely on the CWs."  (R&R at 55.) However, the Magistrate Judge found the CW-based allegations "are too sparse" to show the Individual Defendants actually possessed the knowledge highlighting the falsity of the subject public statements and are "too vague, speculative, and conclusory to contribute to an inference of scienter."  (Id. at 55-56 (providing examples of deficient allegations).)

As to the Company's Reliance on Sales Incentives and Promotions:  Because the Magistrate Judge found Defendants contemporaneously disclosed the Company's use of incentives and promotions to support sales, he concluded that determination precludes finding scienter.  (R&R at 56.)  Moreover, since such a practice is common, offering sales and promotions to meet revenue targets "contribute little to a strong inference of fraud."  (Id. (quoting S.E.C. v. Espuelas, 698 F. Supp. 2d 415, 430 (S.D.N.Y. 2020) (cleaned up); further citations omitted).)

As to the SOX Certifications and Internal Controls: Because Plaintiffs relied upon events that occurred after the

Individual Defendants signed the subject SOX certificates, Magistrate Judge Dunst found Plaintiffs' allegations deficient since they did "not adequately allege[] [Defendants] had any knowledge of 'glaring accounting irregularities' when they executed the SOX certifications." (R&R at 58 (quoting Reilly v. U.S. Physical Therapy, Inc., No. 17-CV-2347, 2018 WL 3559089, *19 (S.D.N.Y. 2018)).) And, regarding internal controls, the Magistrate Judge stated, "[t]hat Hain undertook remedial efforts after the Class Period to strengthen its internal controls 'was a prudent course of action that weakens rather than strengthens an inference of scienter.'" (Id. (quoting Slayton v. Am. Express Co., 604 F.3d 758, 777 (2d Cir. 2010)).) Accordingly, based upon the facts alleged in the SAC, Magistrate Judge Dunst found the more plausible inference to be drawn from the Company's inadequate internal controls was corporate mismanagement, which is unactionable. (See id. at 58-59 ("[I]t is well established that mismanagement is not actionable under the securities laws." (quoting Woolger v. Kingstone Cos., Inc., 477 F. Supp. 3d 193, 240 (S.D.N.Y. 2020)).)

As to Personnel Changes: Magistrate Judge Dunst observed that terminations and resignations of corporate executives alone is not enough to infer scienter; rather, the employment change must be highly unusual and suspicious. (See R&R at 59 (citations omitted).) Thus, a plaintiff needs to plead facts

showing the employment change is either somehow tied to the alleged
fraud or alerts others to the alleged fraud; alternatively, the
employee's scienter must be otherwise evident.  (See id.)  Of the
five Company executives upon whose employment changes the
Plaintiffs relied in alleging scienter, Magistrate Judge Dunst
found none availing.  First, Smith's September 2015 resignation
after only two years with the Company and subsequent year-plus
period of unemployment, without more, did not support scienter.
(See R&R at 60.)  Nor was CW-1's unsupported belief that Smith was
forced out of the Company a sufficient "something more" to show
scienter.  (See id.)  Second, Carroll's March 2017 change in
positions was not highly unusual or suspicious, especially
considering Plaintiffs' own allegations that Carroll regularly
changed positions within Hain.  (See id.)  Additionally, the March
2017 move to another position could be viewed as a promotion and
not a demotion, since the new position concerned "Global Brands"
for all of Hain.  (See id. at 61.)  Third, while Conte resigned as
CFO and Executive Vice President of Finance "on June 22, 2017[,]
the same day Hain filed the 2016 Form 10-K that announced it was
taking remedial measures to correct material weaknesses in its
internal controls," Plaintiffs' SAC lacks "sufficient facts to
support that Conte acted with scienter in connection with the
challenged statements, that his resignation somehow alerted anyone
at Hain to the alleged fraud, or that his scienter was otherwise

evident." (Id.) The Magistrate Judge observed the "more cogent inference" was Conte resigned because of his negligent oversight of responsible employees or the positive optics his resignation would provide. (See id.) Fourth, while Plaintiffs allege the Company's June 2018 announcement of Simon's leaving, they "do not explain why [said] resignation supports an inference of scienter." (Id. at 62.) Absent an explanation, the timing of Simon's departure from Hain cuts against an inference of scienter since it was 16 months after the Class Period ended. (See id.) "Finally, Plaintiffs' allegations regarding the demotion of Meiers and the terminations of Powhida, Ng, and Hyndman are irrelevant to the Individual Defendants' scienter because Plaintiffs do not allege the Individual Defendants were involved in those employment changes." (Id. (citations omitted).)

As to Access to Reports & Core U.S. Business: First, the Magistrate Judge summarily found the SAC allegations that the Individual Defendants "had knowledge of" or "had full and unfettered access to" all materials regarding the Company's U.S. business were generic in nature, thereby rendering them insufficient to raise the requisite inference of scienter. (R&R at 63.) Second, Magistrate Judge Dunst rejected Plaintiffs' reliance on the "core operations" doctrine to establish scienter, since that doctrine is more appropriately viewed as providing support for, but not as an independent basis of, scienter. (See

id. at 64.)  In the absence of other allegations raising an inference of scienter, e.g., "specific factual allegations linking the Individual Defendants to the alleged fraud," "Plaintiffs' core operations doctrine arguments fail." (Id. at 65 (quoting Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 320-21 (S.D.N.Y. 2021) (cleaned up)).)

### (iii) Collective Evaluation Prong

Finally, as to the Collective Evaluation Prong, in undertaking that evaluation of Plaintiffs' alleged circumstances and situations supporting scienter, Magistrate Judge Dunst stated "[t]he SAC 'will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference once could draw from the facts alleged.'" (R&R at 65 (quoting Tellabs, 551 U.S. at 324 (emphasis added)).) He found the collective review of the scienter allegations wanting. Highlighting the Individual Defendants' signings of the Class Period SOX certifications regarding the sufficiency of the Company's internal controls, which controls the Company undertook to self-audit, and which the Company self-reported to the SEC, as well as, thereafter, admitting said controls had been deficient, Magistrate Judge Dunst concluded "'any reasonable shareholder would deem the inference of scienter to be far less compelling than an inference of, at most, non-actionable mismanagement and negligence' on the part of the Individual Defendants." (Id.

(quoting <u>Sachsenberg v. IRSA Inversiones v. Representaciones Sociedad Anonima</u>, 339 F. Supp. 3d 169, 185 (S.D.N.Y. 2018); citing <u>In re Wachovia Equity Sec. Litig.</u>, 753 F. Supp. 2d. 326, 367 (S.D.N.Y. 2011) (finding scienter allegations collectively reflected "[b]ad judgment and poor management . . . not fraud")).)

In making his scienter finding as to Hain, because "Plaintiffs asked the Court to find corporate scienter by 'imput[ing] each Individual Defendant's scienter to Hain'" (R&R at 66 (quoting Suppl. Opp'n at 6)), since the Magistrate Judge found "Plaintiffs failed to plead a strong inference of scienter on the part of the Individual Defendants," he likewise found a lack of Company scienter. (<u>Id.</u>) Magistrate Judge Dunst concluded that, while not asked to do so, he would further find Plaintiffs could not establish corporate scienter by way of a false statement that is exceedingly dramatic. (<u>See id.</u> at 66-67.)

In sum, Magistrate Judge Dunst recommended "the Court find the unabandoned portion of the SAC's Count I fail[s] to state a claim" because Plaintiffs failed to plead an actionable misstatement or omission and failed to raise a strong inference of scienter as to any of the Defendants. (<u>Id.</u> at 67.)

### 2. <u>As to Count III</u>

Finding "Plaintiffs failed to plead their predicate Section 10(b) of Rule 10b-5 violation," Magistrate Judge Dunst

correspondingly recommended the dismissal of Plaintiffs' Section 20(a) Claim, i.e., Count III.  (R&R at 67.)

### 3. As to Dismissal with Prejudice

Finally, Magistrate Judge Dunst recommended the Dismissal Motions be dismissed with prejudice since "Plaintiffs had numerous opportunities to plead a case adequate to survive dismissal."  (R&R at 67.)  Moreover, after the Circuit Court "vacated the 2020 Dismissal Decision, Plaintiffs have neither sought leave to further amend the SAC nor communicated that they possess facts that would bolster it."  (Id. at 68.)

### B. The Parties' Positions

#### 1. Plaintiffs' Objections

Broadly, Plaintiffs object to their purported abandonment of claims concerning Hain's false financial results (hereafter, the "Abandonment Recommendation"), and much of Magistrate Judge Dunst's falsity analysis (hereafter, the "Falsity Recommendation") and all his scienter analyses (hereafter, the "Scienter Recommendation").  (See Obj. at 1, 3.)

##### a. Re: The Abandoned Claims Recommendation
(see R&R at 30-31)

While acknowledging "a plaintiff may abandon a claim either affirmatively or effectively by failing to oppose arguments raised in defendants' motions to dismiss," Plaintiffs argue neither scenario occurred in this instance.  (Obj. at 7-8 (citing

R&R at 30-31).   "First, Plaintiffs could not have effectively abandoned these statements, because Defendants never challenged their falsity."  (Id. at 8 (citing Dismissal Motions; Reply, ECF No. 120; Suppl. Support Memo, ECF No. 134; Defs. App. Br.).) Plaintiffs further argue "such an argument would be futile" in light of the Company's restatement of financial results and its "post-Class Period admissions that it suffered from material weaknesses in financial reporting," as well as the SEC's finding the Company lacked sufficient policies and procedures providing reasonable assurances that quarter-end sales were properly accounted.  (Id. (citing SAC at ¶¶ 146-52, 162; In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made.")).)  Moreover, Plaintiffs contend they have "repeatedly maintained the falsity of Hain's financial statements," supporting their maintenance-of-position argument with citations to previous briefings.  (Id. (citing Opp'n, ECF No. 118, at 11, 16 (listing Hain's accounting policies as categories of alleged misstatements; asserting "Defendants do not challenge the falsity of these alleged misstatements, and have therefore waived this argument"; and incorporating Plaintiffs' previous falsity arguments made in earlier briefs); Pls. App. Br.; Suppl. Opp'n, ECF No. 136, at 3).)  Plaintiffs would assign error to the

Magistrate Judge's reliance on their separate responsive explanation to Defendants' materiality arguments in making his Abandonment Recommendation, elucidating that in response to Defendants' materiality arguments, Plaintiffs argued "Defendants' omission of their reliance on unsustainable practices . . . were qualitative factors that significantly altered the total mix of altered information for investors" (Obj. at 9 (citing Opp'n at 15)); read in context, that explanation should not be interpreted as Plaintiffs abandoning their challenge to Hain's financial results. (Id.)

b. Re: The Falsity Recommendation
(see R&R at 38-46)

Unsurprisingly, Plaintiffs do not object to Magistrate Judge Dunst's recommended finding that the Company's Attribution Statements are not puffery. (See Obj. at 10-11 (citing R&R at 32-33).) However, they object to the Magistrate Judge's further finding that the Attribution Statements are, nonetheless, not actionable "because Hain disclosed in its Class Period [Form] 10-Ks that the Company 'undertook sales incentives and promotions.'" (Obj. at 10 (citing R&R at 41-43).) Plaintiffs contend that, as Judge Spatt did, Magistrate Judge Dunst misunderstands the requirements of a Rule 10b-5(b) claim, as well as Plaintiffs' theory of their claim by, instead, focusing on whether Plaintiffs sufficiently alleged a right-of-return, thereby erring. (See id.

at 12 (citing <u>Hain Celestial</u>, 20 F.4th at 137).)   They further
argue that the Magistrate Judge erred in finding the Company's
disclosures in its Class Period Form 10-Ks sufficiently disclosed
the unsustainable business practices of which Plaintiffs complain,
<u>i.e.,</u> its off-invoice sales concessions (variously referred to as
"channel stuffing", "loading", and "pull-in sales") which
disclosures Plaintiffs assert were inadequate since, <u>e.g.,</u> the
cited disclosures failed to sufficiently convey that part of Hain's
business practices included improper revenue recognition for the
timing of trade and promotional accruals, as well as premature
recognition of revenue of certain sales.  (See <u>id.</u> at 13-14 (citing
R&R at 41-42).)   Additionally, after Hain's 2016 Disclosure, the
Company's stock decline and the SEC's investigation provided a
reasonable inference that Hain's unsustainable business practices
were not conveyed with sufficient intensity and credibility to
dispel the false impression of Defendants' Attribution Statements.
(<u>Id.</u> at 14 (quoting <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154,
168 (2d Cir. 2000)).)   Regarding Hain's accounting controls
misstatements, Plaintiffs maintain the Recommendation is
improperly limited to examining the SEC Order because of the prior
error of finding Plaintiffs abandoned its accounting statement
allegations.  (<u>See id.</u> (citing R&R at 43 and 43-46).)   Plaintiffs
also argue the Report's recommendation that the SEC Order did not
indicate "Defendants knew or should have known of different

material facts about the Company's internal controls contemporaneously with the SOX Statement," is error. (Id. at 15 (quoting R&R at 45).)  They posit that, in combination with their CWs' accounts, the SEC's findings in its Order "sufficiently establish that the SOX Statements were materially false and misleading, and give rise to a strong inference that the Defendants knew, or reasonably should have known, of their misleading nature." (Id.)  Relatedly, Plaintiffs insist the Report fails to adequately consider numerous allegations from their CWs, which provide detailed, specific, firsthand knowledge of the Company's extra-contractual sales concessions and its accounting and internal control practices and which the SEC Order confirmed.  (See id. at 15-16.)  In sum, according to Plaintiffs, the Report improperly failed to find Plaintiffs' CWs' accounts provided sufficient facts to support an inference that (a) Defendants' Attribution Statements, (b) the Company's (i) reported financial results, (ii) accounting policies and practices, and (iii) sales and trade promotions reporting, and (c) the SOX Statements were materially false or misleading.  (Id. at 16 (footnote omitted).)

c. Re: The Scienter Recommendations

Plaintiffs object to the Report's rejection of all Plaintiffs' individual scienter arguments and the Report's less-than-meaningful assessment of Plaintiffs' scienter allegations as a whole, especially in light of Judge Spatt's having previously

determined those allegations (found in Plaintiffs' Amended Consolidated Class Action Compliant (ECF No. 75)) to have come "quite close" but falling "just short" of supporting a strong inference of scienter, and the Circuit Court's directive that, upon remand, this Court "consider[] the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity." (Obj. at 17 (first quoting In re Hain Celestial Grp., Inc. Sec. Litig., No. 16-CV-4581, 2019 WL 1429560, at *19 (E.D.N.Y. Mar. 29, 2019); then quoting Hain Celestial, 20 F.4th at 138).) Plaintiffs expound their objections by addressing them under two categories: the motive-and-opportunity-related scienter and the conscious-misbehavior-and-recklessness-related scienter.

(i) Motive & Opportunity Scienter
(see R&R at 47-65)

Plaintiffs highlight three situations upon which they relied to allege scienter and with which they object to the Magistrate Judge's recommendations, to wit: suspiciously timed and unusual insider stock sales; Individual Defendants' bonuses; and, use of the Company's stock for acquisitions. As to the stock sales, Plaintiffs argue that, although Magistrate Judge Dunst "correctly found that the 'sales volume and the holding portion' of Defendants insider stock sales 'favor[ed] an inference of scienter'," he erred in concluding the "suspiciously timed and

unusual stock sales did not support an inference of scienter."
(Obj. at 18 (citing R&R at 50-51; quoting R&R at 51).)   They
contend this error was based upon the Magistrate Judge having
inappropriately engaged in fact-finding regarding:

> (i) Plaintiffs' purported failure to allege
> net profits (versus the net proceeds reported
> in Reports on Form 4 filed the SEC); (ii) the
> timing of the insider sales; and (iii) the
> absence [of] suspicious insider stock sales by
> the two Individual Defendants who were not at
> Hain for the entirety of the Class Period.

(Id.)   Plaintiffs continue by faulting the Magistrate Judge for
advancing, without analysis, an argument not made by Defendants,
i.e., that Plaintiffs failed to allege net profits, which, in any
event, is but one, non-dispositive factor to consider.   (Id. at
18-19 (citing R&R at 48).)   Indeed, according to Plaintiffs, given
they pled proceeds from the sales, the percentages of holdings
sold, and the alleged suspect timing of the sales, which are
relevant factors to the scienter determination, the lack of alleged
net profits is of no consequence.   (Id. at 19.)   As for the timing
of the insider stock sales, Plaintiffs contend the Report's focus
on trades made within the final 100-day period from the end of the
Class Period was erroneous because Magistrate Judge Dunst
arbitrarily and capriciously derived that timeframe from cherry-
picking fact-specific case law to conclude that the timing of the
subject sales, i.e., outside the 100-day period, cuts against
scienter. (Id. (citing R&R at 49).)   Rather, the Magistrate Judge

should have considered the timing of the sales with other factors, such as the percentage of shares sold by Carroll and Simon, which would have supported finding an inference of scienter.  (See id. at 19-20.)   Moreover, Plaintiffs would have the Court disavow Magistrate Judge Dunst's discounting of Carroll's and Simon's stock sales as inferring scienter based upon the lack of stock sales by insiders Smith or Conte; at most, that fact should undermine scienter as to Smith and Conte only.  (See id. at 20 (citing R&R at 49-50).)

Additionally, Plaintiffs assert the R&R erroneously recast their well-pled allegations regarding Carroll's and Simon's bonuses, rendering those allegations too general to support an inference of improper motive.  (See Obj. at 20 (citing R&R at 47); see also R&R at 52.)   Indeed by truncating Plaintiffs' bonus-related allegations to "the Individual Defendants were motivated to inflate the Company's stock price to increase their compensation," Plaintiffs argue the Magistrate Judge improperly concluded those allegations failed to establish scienter since "the law is clear that the desire of individual defendants to . . . increase their compensation by artificially inflating stock price is not sufficient to establish motive."  (R&R at 52.)   Moreover, they contend this misconstrues their allegations and position since what they pled was that Carroll and Simon "were motivated to misrepresent Hain's financial results because of the large cash

bonuses and stock option grants that were closely tied to the
Company's financial performance, including Hain's net sales," and,
that in FY2015, Simon met his bonus target for net sales by only
0.1%." (Obj. at 20-21 (first quoting SAC at ¶ 363; then citing
SAC at ¶ 364).) In other words, "nowhere in the [SAC] do Plaintiffs
contend that Defendants manipulated Hain's stock price to increase
their bonuses; yet, the Recommendation denigrates these well-pled
allegations on that errant (and non-existent) basis." (Id. at 21
(citing R&R at 54[8]).)

        Similarly, Plaintiffs maintain that the Report "recasts
Plaintiffs' allegations concerning Defendants' use of Hain stock
to effectuate acquisitions during the Class Period," thereby
declining to find those allegations support a finding of scienter.
(See Obj. at 21 (comparing SAC ¶ 367, with R&R at 52-54
("[Plaintiffs] assert in a conclusory fashion that Defendants
acted with scienter to inflate Hain stock to complete three
acquisitions in 2014 and one acquisition in 2015.")).) Plaintiffs
contend their allegations are that Defendants carried out the
subject acquisitions with fraudulently inflated stocks, which is
"a motive allegation that supports a finding of scienter." (Id.
(explaining further "Plaintiffs do not allege that Defendants'
acquisitions were fraudulent").) Hence, Plaintiffs would have the

---

[8] Citation to page 54 of the R&R is incorrect; the correct citation
should be to page 52 of the R&R.

Court reject the Magistrate Judge's finding of lack of scienter arguing his misconstruction of their allegations regarding Defendants' use of Hain's stock for the subject acquisitions led to this incorrect recommendation.  (See id.)

(ii)   <u>Misbehavior or Recklessness Scienter</u>
(<u>see</u> R&R at 54-65)

Plaintiffs claim several errors in Magistrate Judge Dunst's recommended finding of no scienter.  (<u>See, e.g.</u>, Obj. at 22 ("While the Recommendation noted that Defendants triggered a duty to disclose the existence of the improper sales practices and deemed Defendants' argument against such disclosure as 'untenable' and 'misplaced' . . . it paradoxically concluded Defendants' failure to fulfill that duty was not undertaken with scienter." (<u>Id.</u> (first quoting R&R at 34; then citing R&R at 31-38).)

First, regarding Defendants' knowledge of, and active participation in, the Company's unsustainable sales practices, Plaintiffs argue it was error to find no scienter based upon the Individual Defendants' personal involvement in the undisclosed sales practices, together with their extensive efforts to conceal the extent and terms of those practices, which other courts have found adequate.  (<u>Id.</u> at 23 (citing <u>In re Scholastic Corp. Sec. Litig.</u>, 252 F.3d 63, 76 (2d Cir. 2001)).)  Plaintiffs contend this error occurred because the Magistrate Judge ignored Plaintiffs' relevant allegations regarding same, instead "awkwardly

Page 30 of 60

contend[ing] that the absolute right of return allegations were based on inadequate CW allegations and therefore failed." (Id.) Moreover, from Plaintiffs' perspective, Magistrate Judge Dunst incorrectly failed to consider the Individual Defendants' close monitoring of inventory levels as an indicia of scienter (see R&R at 24-25), as well as Plaintiffs' "allegations that distributors' refusal to accept excess end-of-quarter inventory from Hain was the match that lit the fuse of the Company's accounting investigations, SEC settlement, and massive investor losses." (Id. at 24.)

Second, regarding the Company's internal controls and accounting, Plaintiffs assert Hain's admission in its late-filed FY2016 Form 10-K that the Company needed to restate its results for FY2014, FY2015, and the first three quarters of FY2016 supports scienter; therefore, the Magistrate Judge's recommended finding to the contrary is error. (See Obj. at 24-25.)

Third, regarding their allegations of terminations, resignations, and demotions, Plaintiffs maintain Magistrate Judge Dunst incorrectly concluded "that the personnel changes during the Class Period at Hain's accounting department, executive officer positions, and other functions directly related to the [alleged] fraud does not contribute to an inference of scienter," coupled with the wrong finding that "Plaintiffs did not adequately plead independent facts indicating that the personnel changes were tied

to the alleged fraud, that these changes somehow alerted defendants to the fraud, or that the defendants' scienter was otherwise evident." (Id. at 25 (citing R&R at 59).) Plaintiffs are left perplexed given they "plead that the termination of seven executives and the demotion of two more--a group that included each Individual Defendant--contribute to a strong inference of scienter when considered holistically with Plaintiffs' other scienter allegations." (Id. (citing SAC at ¶¶ 339-50).) They argue other courts have found such suspicious resignations tied to unethical sales practices are at least as compelling as any opposing scienter. (Id. (quoting Bos. Ret. Sys. v. Alexion Pharm., Inc., 556 F. Supp. 3d 100, 136 (D. Conn. 2021).) Relatedly, to the extent the Magistrate Judge stretches to find other, alternative explanations for the terminations, resignations, and demotions, he erred in finding those explanations to be more compelling than the ones advanced by Plaintiffs. (See id. at 26-27 ("The Recommendations independent fact finding and creation of alternative explanations for personnel changes at Hain is improper and must be rectified.").)

Fourth, regarding Plaintiffs' reliance upon the core operation doctrine to support scienter, in asserting the Magistrate Judge erred in recommending Plaintiffs' core operations theory does not support such a finding, Plaintiffs state they never argued their scienter allegations hinged only on that theory.

(Obj. at 27 (citing Suppl. Opp'n at 6-8; Opp'n at 17-23; CAC Opp'n at 9-19).)   In any event, even if not expressly endorsed by the Circuit Court, courts within the Second Circuit rely upon the doctrine to infer scienter.   (See id. (citing Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., 422 F. Supp. 3d 821, 852 (S.D.N.Y. 2019); further noted cases omitted).)

### d. Re: The CWs' Allegations Recommendation

Succinctly, Plaintiffs argue that despite their well-pled CW allegations, Magistrate Judge Dunst erred in finding those allegations "too conclusory and generic" and "based upon rumor or conjecture" because (1) said allegations were detailed and (2) complaints may be based upon hearsay at the pleading stage. (Obj. at 28 (citing City of Warren Police & Fire Ret. Sys. v. World Wrestling Enter., 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020).) Plaintiffs highlight "[t]he City of Warren opinion also rejected 'as easily distinguishable' the defendants' reliance upon the same cases that the Recommendation uses as grounds to ignore the well-pled allegations from the CWs." (Id. (citing City of Warren, 477 F. Supp. 3d at 132 n.1).)   Plaintiffs would further assign fault to the R&R since the Report "ignores precedent from within the Second Circuit which plainly holds that confidential witnesses need not have direct contact with Individual Defendants to credit their allegations." (Id. at 28-29 (citing In re Avon Sec. Litig., No. 19-CV-1420, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019)).)

e. Re: The Corporate Scienter Recommendation

Reciprocally, Plaintiffs propound that "[b]ecause the Court should correct the Recommendations' mistaken position that the [SAC] should be dismissed for failure to plead scienter as to the Individual Defendants, the Court should also find that the Individual Defendants' scienter is imputed to Hain."   (Obj. at 29.)

f. Re: The Section 20(a) Claim Recommendation

Correspondingly, and based upon their objections to the Magistrate Judge's recommendations that Plaintiffs' first cause of action, the Rule 10(b) Claim, be dismissed, Plaintiffs also lodge an objection to Magistrate Judge Dunst's recommendation that their third cause of action, the Section 20(a) Claim, be dismissed. (See Obj. at 29.)

g. Re: The Dismissal with Prejudice Recommendation

Finally, as to Magistrate Judge Dunst's recommendation that Plaintiffs' SAC be dismissed with prejudice, Plaintiffs object to same, arguing that the recommendation is improperly based upon the passage of time when, in actuality, Plaintiffs have "had only two opportunities to replead."   (Obj. at 30 ("The Recommendation did not . . . deem amendment futile," but simply that the case "has been pending too long." (Id. (citing R&R at 68); see also R&R t 67.)

2. Defendants' Responses[9]

a. Re: The Scienter Recommendations, Generally

Defendants maintain Magistrate Judge Dunst properly considered scienter, following the Second Circuit's directive to do so collectively.  (Response at 4.)  Thus, the Magistrate Judge's initial individual consideration of Plaintiffs' various scienter allegations is of no moment.  (See id.)  Moreover, in collectively evaluating Plaintiffs' scienter allegations, Magistrate Judge Dunst rightly determined "that any reasonable inference of scienter was 'far less compelling than an inference of, at most, non-actionable mismanagement and negligence.'"  (Id. at 5 (quoting R&R at 65).)

(i) Motive & Opportunity Scienter

Defendants would debunk each of Plaintiffs' motive-and-opportunity-related objections.  As to the stock sales, Defendants assert the Magistrate Judge correctly relied upon three factors,

---

[9]  Defendants' Response does not track the order of Plaintiffs' objections; instead, their Response proceeds as following:  first, addressing scienter (i) beginning with its collective consideration, (ii) then proceeding to the Motive and Opportunity Prong, (iii) followed by the Misbehavior and Recklessness Prong, (iv) then to consideration of the CWs' allegations, and (v) finally addressing corporate scienter; second, addressing Plaintiffs' purported abandonment of claims concerning Hain's reported financial results; third, addressing whether Plaintiffs' pled an actionable misstatement or omission, both as to an absolute-right-of-return and as to disclosure of certain sales practices; fourth, addressing Plaintiffs' Section 20(a) Claim; and, finally, addressing the recommendation to dismiss this action with prejudice.

collectively, in finding no sale-related scienter: the failure to allege net profits from the sales, which the Magistrate Judge found to be "merely one of the many '[r]elevant factors'" considered (Response at 6 (citing R&R at 48; further stating "[n]o portion of the Report suggests that this finding was alone dispositive")); the lack of suspiciously timed stock sales, with the Magistrate Judge using a 100-day-period, supported by case law, merely as a contrast to Plaintiffs' position that sales well-outside a 100-day-period before the end of the Class Period support scienter, but for which proffered longer time-period Plaintiffs do not cite any case law (see id. at 7 (citing R&R at 49)); and the lack of other insider sales, which -- contrary to the Plaintiffs' objection -- was not used as a "per se rule" against scienter (id. (comparing Obj. at 7, with R&R at 50-51)). Moreover, to the extent Plaintiffs argue the Magistrate Judge inappropriately engaged in fact-finding, that is incorrect since what Magistrate Judge Dunst did was draw inferences as the Supreme Court instructs. (See id. (first citing Obj. at 18; then quoting Tellabs, 551 U.S. at 314).)

Then, as to bonuses, Defendants contend the Magistrate Judge's findings that Plaintiffs' bonus-related allegations do not support scienter "are in lockstep with the settled principle of Second Circuit law . . . ." (Response at 8 (citing R&R at 52 (collecting cases)).) They argue Magistrate Judge Dunst followed "the well-established principle" "that scienter cannot be based on

a motivation for the company to succeed," which "applies equally to sales figures—<u>i.e.</u>, financial performance—as it does to stock prices." (<u>Id.</u> (citations omitted); <u>see also</u> <u>id.</u> at 9.)

Continuing, as to Hain's acquisitions with Company stocks, Defendants contend Magistrate Judge Dunst properly found Plaintiffs' acquisition-related allegations do not support scienter given the lack of necessary extremely contextual allegations demonstrating a unique connection between the purported fraud and the acquisition. (Response at 9 (citing R&R at 53-54).) Defendants would further have the Court find unpersuasive Plaintiffs' misapprehension-based objection regarding the Magistrate Judge's finding that "Plaintiffs offer nothing to demonstrate that Defendants made material misstatements or omissions to inflate Company stock price for any of the Acquisitions" since, by its plain meaning, the finding makes clear no misapprehension was had. (<u>Id.</u> at 10 (quoting R&R at 53-54).) In addition, the cases upon which Plaintiffs rely do not support their contention that the Company's stock-reliant acquisitions had any unique connection to the alleged fraud. (<u>See</u> <u>id.</u> (further stating "Plaintiffs admit the acquisitions were part of Hain's business strategy <u>since 2000</u>" (citing SAC at ¶¶ 45-46; emphasis in Response)).)

(ii) <u>Misbehavior or Recklessness Scienter</u>

Under the Misbehavior or Recklessness Prong, Defendants initially contend that, as the Magistrate Judge found, Plaintiffs did not adequately plead an absolute-right-of-return; therefore, their theory of "unsustainable practices" fails to meet the requisite pleading standards.   (Response at 11.)   Indeed, Defendants argue Plaintiffs do not dispute Magistrate Judge Dunst's finding that Plaintiffs have abandoned this theory of their case, which Defendants maintain "is an allegation and theory that was offered to support each and every one of [Plaintiffs'] claims." (Response at 11 (citing R&R at 39, 55).)   Defendants highlight that "Plaintiffs refer to the alleged 'absolute right to return' at least 25 times in the SAC as support for its core 'unsustainable practices' theory—that Hain was selling product it expected would get returned and therefore the sales were 'unsustainable'." (<u>Id.</u> (citing SAC).)   Yet, those allegations "rely entirely on the CWs", which the Magistrate Judge found were "too sparse" to support the claim, thereby rightly supporting the Magistrate Judge's finding that scienter was not alleged based upon "unsustainable practices. (<u>Id.</u> at 11-12 (quoting R&R at 39, 55) (reiterating "Plaintiffs do not challenge here that they failed to adequately plead an absolute right of return" thereby requiring an adoption of the Magistrate Judge's recommendation that there is no inference of scienter based upon "unsustainable practices").)

Furthermore, Defendants advance that Plaintiffs' objection regarding Simon's and Carroll's negotiated sales should be overruled since Magistrate Judge Dunst both addressed those allegations and "found that 'offer[ing] sales and promotions to meet revenue targets . . . are common practice." (Response at 12 (quoting R&R at 56-57).) Because that is what the Magistrate Judge found to have occurred here, as underscored by the SEC Order, it was also proper that he found no strong inference of scienter based upon Carroll's and Simon's sales practices. (See id.; see also id. at 13 (further discussing how the SEC Order undermines inferences of wrongful intent regarding the Company's sales practices).)

In addition, Defendants propound that the Magistrate Judge's finding of a lack of scienter based upon SOX, GAAP, and internal controls violations was correct because: Plaintiffs relied on facts that occurred after the Individual Defendants signed their SOX certifications, when what was necessary was allegations of knowledge at the time the SOX certifications were executed (Response at 13); the Company's financial statements were audited by Ernst & Young from 2013 through 2016, thereby negating any intent to deceive (see id. 13-14); and, Hain's remedial actions after the Class Period undercut any inference of scienter, which recommendation Plaintiffs do not challenge (see id. at 14). Thus, Defendants contend these allegations reflect, at most

"[u]nactionable corporate mismanagement" and not scienter.  (Id. citing R&R at 58-59).)

Likewise, Defendants counter Plaintiffs' objection regarding their employment-status-changes allegations, i.e., that the Magistrate Judge wrongly engaged in independent fact finding and creating alternative explanations (see Obj. at 27), advancing their position that Magistrate Judge Dunst properly found Plaintiffs' reliance on CW allegations insufficient to allege scienter, as well as competing inferences that could be drawn from said allegations, which outweighed Plaintiffs' proffered inference of scienter.  (Response at 14.)  According to Defendants, this was correct because "the court reviewing scienter allegations is directed to consider 'competing inferences rationally drawn from the facts alleged.'"  (Id. at 15 (quoting Tellabs, 551 U.S. at 314).)  Moreover, this was the right conclusion given the absence of independent evidence suggesting the employment changes were highly unusual.  (Id. (citing R&R at 59).)

### (iii)   The CWs' Allegations

Finally, regarding Magistrate Judge Dunst's finding that Plaintiffs' CWs' allegations lack sufficient specificity, Defendants argue "Plaintiffs vaguely claim that the CWs generally support scienter," but fail to make specific arguments rebutting why said statements are not too conclusory or vague to be credited. (Response at 16 (citing R&R at 39-40, 55-56, 60) (further

highlighting that in their Objection, Plaintiffs "do not discuss any particular CW or specific allegation").)  In support of the Report, Defendants provide a witness-by-witness list of examples showing why Magistrate Judge Dunst found each CW's allegations to be too vague and conclusory, and, thereby, insufficient.  (See Response at 17-18.)  Additionally, Defendants argue "Plaintiffs have long been on notice as to the fatal flaws in their reliance on their CWs" and encourage this Court to "adopt the persistent conclusion in three written decisions that 'the confidential witnesses' allegations are too vague, speculative, and conclusory to contribute to an inference of scienter.'"  (Id. at 18 (citing R&R and Judge Spatt's prior Dismissal Orders, ECF Nos. 106 & 122).)

### (iv) Corporate Scienter

Relatedly, since "Plaintiffs rely exclusively on the imputation of individual scienter to Hain to plead the Company's corporate scienter," since the Magistrate Judge properly found Plaintiffs failed to raise an inference of scienter as to the Individual Defendants, the correctness of that conclusion inures to the related conclusion that Plaintiffs failed to plead corporate scienter.  (Response at 18.)

### b.  Abandoned Claims Recommendation

Addressing Plaintiffs' objection to Magistrate Judge Dunst's claim-abandonment finding, Defendants focus on the recommended finding that "Plaintiffs' challenge is 'not [to] the

financial figures [themselves] but instead the failure to disclose Hain's 'reliance on pull-in sales tactics to generate sales.'" (Response at 19 (quoting R&R at 30 (brackets in Response)).) Defendants explain that, in the context of opposing Defendants' materiality arguments raised in their Dismissal Motions, Plaintiffs challenged the omission of allegedly improper tactics underlying the Company's financial results and not the literal falsity of those results. (See id. (citing Pls. Opp'n at 12 and Suppl. Opp'n at 3).) Thus, Magistrate Judge Dunst's claim-abandonment finding was correct since "Plaintiffs themselves took the position that the SAC 'challenge[d] as materially omissive not the financial figures' but the supposed failure to disclose the sales tactics 'that generated these figures.'" (Response at 19-20 (quoting Report at 30 (citing Plaintiffs' own pleading)).) Hence, Defendants characterize this not as abandonment, but "an explicit acknowledgement of what [Plaintiffs'] claims are and are not about." (Id. at 20; see also id. at note 10 (asserting that even if Plaintiffs had not abandoned their literal-falsity-of-financial-results claim, such claim would fail on scienter grounds).)

### c. The Unactionable Statements Recommendaiton

Contrary to Plaintiffs, Defendants further insist the Magistrate Judge correctly found Plaintiffs failed to plead an actionable omission, i.e., that Hain did not disclose its

engagement of certain unsustainable practices, which Plaintiffs contend consisted of an "absolute right of return" and other practices such as sales incentives and promotions. (Response at 20 (citing R&R at 39).) As to the absolute-right-to-return prong, Defendants underscore the Magistrate Judge's reliance on CW allegations in reaching his recommendation that Plaintiffs' claims are too conclusory and/or vague to sufficiently plead the Company generated sales by relying upon that practice. (See id. (citing R&R at 39-40).) In sum, Defendants claim, "[b]ecause Plaintiffs did not properly plead that Hain granted an absolute right of return, they ipso facto did not plead a failure to disclose it." (Id.) As to the other sales practices, the Magistrate Judge correctly found the Company disclosed such practices (see id. at 21 (citing R&R at 41)) and that "Plaintiffs conceded explicitly in the SAC that 'throughout the Class Period' the Company disclosed its use of these sales incentives and specified that its reported sales figures were net of those incentives." (Id. (quoting R&R at 42).) Simply, there can be no failure-to-disclose claim because the Company did disclose. (See id. at 22 (citing R&R at 42 (collecting cases)).) Moreover, Plaintiffs' objection based upon the Company's alleged lack of intensity and credibility regarding its disclosure of incentives and promotions is unavailing, especially since this is not a case of "affirmative misstatements" requiring intense correction. (See id. (citing R&R at 41-43)

(further discounting cases Plaintiffs rely upon as inapposite to the instant case).)  Rather, Magistrate Judge Dunst was correct in finding Hain openly disclosed its sales and incentives practices. (See id.)

Addressing whether the Company's statements regarding its accounting controls were actionable, Defendants maintain Plaintiffs do not challenge Magistrate Judge Dunst's recommendation that the statements are opinions and, therefore, not actionable.  (Response at 23 (citing R&R at 43-46).) Defendants explain that "Plaintiffs do not dispute the Report's conclusion that the 'SEC Order does not even discuss . . . the assertions in the SOX Statements that management reviewed Hain's internal controls and concluded that the Controls were effective.'"  (Id. (quoting R&R at 44).)  Further, regarding the Individual Defendants knowing about deficient accounting controls at the time they signed the SOX Statements, Plaintiffs rely upon the CWs' statements to support their objection to the Report, which is not enough to sustain their objection given the Magistrate Judge's finding that the SAC CW allegations are too general and conclusory to support Plaintiffs' position.  (Id. at 24.)  And, as Defendants also observe, Plaintiffs do not "address the principle of law that a 'post-Class Period identification of control deficiencies' is insufficient to show that the Individual Defendants knew—at the time they signed their certification[s]—of

any deficiencies in the Company's internal controls."   (Id.
(quoting R&R at 45 (citing cases)).)

### d. The Section 20(a) Claim Recommendation

As to Plaintiffs' Section 20(a) claim, their third cause
of action, Defendants argue Plaintiffs' objection to the dismissal
of this claim is based on its unavailing objections to Magistrate
Judge Dunst's recommendation that their Rule 10(b) Claim be
dismissed.   (Response at 29.)   Because there are no grounds to
sustain Plaintiffs' underlying objections, this concomitant
objection likewise fails.   (See id.)

### e. The Dismissal with Prejudice Recommendation

Finally, the Defendants would have the Court overrule
Plaintiffs' objection to the recommendation that their SAC be
dismissed with prejudice.   (See Response at 29-30.)   They base
their position on the passage of time, which is mentioned by the
Magistrate Judge, further arguing that "Plaintiffs offer no new
facts that they could plead to rectify the SAC's deficiencies."
(Id. at 30.)

### C. The Court's Rulings

#### 1. Scienter

Notwithstanding Magistrate Judge Dunst's threshold
recommendation finding that Plaintiffs have failed to plead an
actionable misstatement or omission (see R&R at 46), with which
the Court concurs, in light of the Second Circuit's mandate that

"[o]n remand, the district court should independently reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity," Hain Celestial, 20 F.4th at 138, herein the Court focuses on Magistrate Judge Dunst's scienter recommendations, Plaintiffs' objections thereto, and Defendants' responsive arguments.  Hence, for the reasons that follow, even if the Court were to sustain Plaintiffs' further Rule 10(b) Claim-related objections, because the Court overrules Plaintiffs' scienter-related objections--individually and cumulatively--it is not necessary to address these other objections or Plaintiffs' objections regarding their Rule 20(a) Claim, which, as pled, is dependent upon their Rule 10(b) Claim.  The Court proceeds by addressing the scienter objections as presented by Plaintiffs: first, the motive-and-opportunity-related scienter; and, second, the conscious-misbehavior-and-recklessness-related scienter. Generally, however, Plaintiffs' reliance on Judge Spatt's prior "close call" observation regarding scienter is of no moment since it applied to Plaintiffs' Amended Consolidated Class Action Complaint, not the subject SAC.  Second, such reliance would fly in the face of the Circuit Court's directive that this Court consider afresh the SAC, which is precisely what the Magistrate Judge has done.

a. Motive & Opportunity Scienter

The Court agrees with Magistrate Judge Dunst regarding Plaintiffs' reliance on stock sales; individually and collectively, finding it does not raise an inference of scienter. After properly identifying the appropriate framework for considering stock sales as an inference of motive-and-opportunity-related scienter, i.e., considering various relevant non-dispositive factors (see R&R at 48 (listing by way of example: sale profits; percentage of stocks sold; change in volume of insider sales; number of shares sold; and, timing of sales)), the Magistrate Judge examined Plaintiffs' allegations against this framework, correctly finding the allegations wanting, with each finding well-supported by case law. (See R&R at 48-51.) Likewise, the Court rejects Plaintiffs' characterization of the Magistrate Judge's consideration of the various sales factors as engaging in erroneous fact-finding. Not so. As Plaintiffs themselves recognize (see Opp'n at 17), in accordance with Supreme Court directives, when presented with scienter allegations, courts are to consider competing inferences rationally drawn from the facts alleged. See Tellabs, 551 U.S. at 323-26 (instructing "the court must take into account plausible opposing inferences" and "the reviewing court must ask: [w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing

inference?"). Magistrate Judge Dunst has performed the requisite comparison, not engaged in improper fact-finding. Further, the Court will not assign error to the Magistrate Judge's consideration of Plaintiffs' failure to allege net profits on the sales notwithstanding this argument was not raised by Defendants; it is a relevant factor and clearly was not dispositive in the Magistrate Judge's consideration of scienter related to the stock sales. See, e.g., In re Inv. Tech. Grp., Inc. Sec. Litig., 251 F. Supp. 3d 596, 622 (S.D.N.Y. 2017) ("A number of courts in this district have found that allegations do not support a finding of 'motive and opportunity' when net profits are not pleaded") (collecting cases). Similarly, Magistrate Judge Dunst's use of a comparative 100-day-period in assessing the time period of the stock sales is not error; case law supports his use of this approximate time-frame to assess the suspiciousness of the stock sales. See, e.g., Reilly, 2018 WL 3559089, at *14 ("Indeed, courts in this Circuit are frequently skeptical that stock sales are indicative of scienter where no trades occur in the months immediately prior to a negative disclosure" (collecting cases)). In the absence of countervailing case law to support their argument for consideration of a longer time-period, Plaintiffs' objection on this point carries little weight. Finally, Plaintiffs' objection to Magistrate Judge Dunst finding Individual Defendants Conte and Smith not selling Company stock as cutting against a finding of

scienter is little more than a disagreement with his assessment of this stock sale factor; their theory that these Individual Defendants were not with the Company for the full 3.5-year Class Period, without more, is unavailing to assign error to the Magistrate Judge's consideration of this factor.  Nor have Plaintiffs persuasively shown how Magistrate Judge Dunst failed to decide the stock sales factor on the facts of this case.  Of import, thereafter, Magistrate Judge Dunst collectively evaluated the stock sales motive-and-opportunity allegations and found they failed to infer scienter as compelling as competing non-fraudulent inferences; Plaintiffs raise no objection to this finding, which is not clearly erroneous.  In sum, Plaintiffs' stock-sales-related objections are overruled.

Regarding consideration of Carroll's and Simon's bonuses as a scienter factor, the Court disagrees with Plaintiffs' contention that Magistrate Judge Dunst improperly recast their allegations.  The Magistrate Judge fairly summarized Plaintiffs' argument and properly assessed the related allegations; his subsequent bonuses-related finding, supported by case law, is not faulty.  Hence, Plaintiffs' bonuses-related objection is overruled.

Finally, Plaintiffs' objection regarding Magistrate Judge Dunst's stock-supported acquisition finding -- i.e., that such acquisitions did not infer scienter -- is equally unavailing.

Plaintiffs do little more than disagree with the Magistrate Judge's succinct rephrasing of Plaintiffs' relevant stock-supported acquisition allegations; such disagreement is untenable to sustain Plaintiffs' lodged objection. Indeed, for this "extremely contextual" inquiry, Plaintiffs fail to identify any unique connection between the alleged fraud and the subject acquisitions that could support such an inference. See ECA, 553 F.3d at 201 n.6; see also id. at 201 ("[T]he link between the acquisition and the alleged misconduct simply is not close enough to strengthen the inference of an intent to defraud."). Therefore, without more, it was not erroneous for the Magistrate Judge to find a lack of scienter from the proffered stock-supported acquisitions, thereby warranting the overruling of Plaintiffs' corresponding objection.

### b. Misbehavior or Recklessness Scienter

As stated, supra, Plaintiffs advance arguments of scienter through recklessness. To advance a recklessness theory in support of their fraud claims, Plaintiffs are required to allege "a state of mind approximating actual intent, and not merely a heightened form of negligence." In re Bristol-Myers Squibb Co. CVR Secs. Litig., No. 21-CV-8255, -- F. Supp. 3d --, 2023 WL 2308151, at *4 (S.D.N.Y. Mar. 1, 2023) (quoting Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 106 (2d Cir. 2015) (cleaned up). That is, "a plaintiff must allege, 'at the least,' that the defendant engaged in 'conduct which is highly unreasonable and which

represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Id. (quoting Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) (cleaned up).

The Court finds Plaintiffs' objections to the Magistrate Judge's recklessness scienter recommendation, which Magistrate Judge Dunst based upon five categories of allegations, are not sustainable. To begin, Plaintiffs make a perfunctory objection that the Magistrate Judge has not properly considered Plaintiffs' allegations of the Individual Defendants' personal involvement in the Company's alleged undisclosed sales practices. (See Obj. at 22-23 (citing R&R at 55-57).) Indeed, Plaintiffs fail to raise any meaningful objection to the Magistrate Judge's finding regarding the absolute-right-of-return allegations. (Cf. R&R at 55-56, with Obj. at 23.) Nor do they clearly object to the Magistrate Judge's determination that "at the heart of Plaintiffs' claims is the allegation that Hain drove sales by granting distributors a right to return Excess Inventory, [and that] the exercise of that right in turn increased the deficit between Hain's actual and reported sales each financial quarter . . . ." (R&R at 39; see also id. at 55.) As Defendants observe, "Plaintiffs refer to the alleged 'absolute right to return' at least 25 times in the SAC as support for its core 'unsustainable practices' theory" and

that "[t]he Report rightly found that such allegations 'rely entirely on the CWs' [which] were 'too sparse' to support the claim." (Response at 11 (citing R&R at 39, 55; citations to SAC omitted); see also id. at 16-18 (further addressing the CWs' allegations as "vague, conclusory and ultimately insufficient" and listing examples of same).) Relatedly, other than baldly asserting the Magistrate Judge "fail[ed] to engage with Plaintiffs' allegations that Defendants had personal knowledge of the unsustainable and undisclosed sales practices," (Obj. at 23 (emphasis in original)), Plaintiffs fail to expound upon this point, which is unavailing in light of Magistrate Judge Dunst's thorough discuss of same. (See R&R at 56-57 (Part IV(D)(2)(b), "Hain's Reliance On Sales Incentives and Promotions").) Moreover, as Defendants astutely highlight, "the SEC Order undermines inferences of wrongful intent on this question . . . stat[ing] there was nothing wrong with Hain's sales practices, and the SEC did not charge the [C]ompany or any individual with fraud." (Response at 13; see also R&R at 56-57 ("[E]ven assuming the Individual Defendants pushed the Company to offer sales and promotions to meet revenue targets[,] that would 'contribute[] little to a strong inference of fraud because such actions are common practice.'" (quoting S.E.C. v. Espuelas, 698 F. Supp. 2d 415, 430 (S.D.N.Y. 2010); further citations omitted).)

On the issue of alleged GAAP and internal controls violations, Plaintiffs' objections are little more than their disagreement with the Magistrate Judge's recommendation that the alleged violations do not support scienter. (See Obj. at 24-25.) Moreover, the case upon which Plaintiffs rely, In re CannaVest Corp. Secs. Litig., which is factually inapposite from the instant one, undercuts their objection. 307 F. Supp. 3d 222, 245-46 (S.D.N.Y. 2018). There, the plaintiffs' improper accounting allegations were strongly supported by statements of a confidential witness, who: was a financial consultant hired by the company; worked directly with the CEO; knew right away that the company was not applying proper accounting practices; and, reported frequently to the company's board of directors. See id. This is "far more than a misapplication of accounting principles," which is what is required to establish recklessness when improper accounting is alleged. Id. (internal quotations and citation omitted). Thus, the CannaVest allegations established that the company knew of its accounting failures. By contrast, here, having examined the SAC, the Magistrate Judge stated:

> Plaintiffs neither undermined the assertions in the SOX Statements that management reviewed Hain's internal controls and concluded that the controls were effective nor adequately pled that Defendants knew or were reckless in not knowing that the Company's internal controls were deficient. To this point, Plaintiffs "have not adequately alleged that defendants had any knowledge of 'glaring

> accounting irregularities' when they executed
> the SOX certifications . . . ." <u>Reilly</u>, 2018
> WL 3559089, at *19.   Instead, Plaintiffs
> "rel[y] only on facts occurring after
> Individual Defendants signed their
> certifications, namely the post-Class Period
> disclosures of material weaknesses in [Hain]'s
> internal controls . . . That dog won't hunt."
> <u>[In re] Diebold [Nixdorf, Inc., Secs. Litig.,</u>
> No. 14-CV-2900,], 2021 WL 1226627, at *14
> [(S.D.N.Y. Mar. 31, 2018)].

(R&R at 58.)

Finally, as to Plaintiffs' objection regarding personnel changes, they underscore having pled "the termination of <u>seven</u> executives and the demotion of <u>two</u> more—a group that includes each Individual Defendant," which Plaintiffs argue "contribute to a strong inference of scienter when considered holistically with Plaintiffs' other scienter allegations." (Obj. at 25 (citing SAC ¶¶ 339-50).) They also contend the timing of the personnel changes can support a strong inference of scienter. (<u>Id.</u> at 26 (quoting <u>In re Salix Pharm., Ltd.</u>, No. 14-CV-8925, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016).) That may be so, but in <u>Salix</u>, cited by Plaintiffs, the court found the resignations of top company executives to be "'highly unusual and suspicious' because the [company] Board exercised the clawback provisions in their resignation agreements," which provisions "allow[ed] for a clawback based on a Board determination that the Individual Defendants 'intentionally engaged in wrongdoing.'" <u>Salix</u>, 2016 WL 1629341, at *15.   The timing of the <u>Salix</u> executives' resignations

was not the dispositive factor in finding scienter based upon resignations. See, e.g., Francisco v. Abengoa, S.A., 624 F. Supp. 3d 365, 402 (S.D.N.Y. 2022) ("As there is no other circumstantial evidence of fraud, even if the Court were to find [the timing of] Sanchez Ortega's resignation suspicious, it would not be enough to rescue plaintiffs' claims.").

In comparison, here, Magistrate Judge Dunst properly found the timing of the personnel changes were not enough to elevate said changes to "highly unusual and suspicious" given the dearth of facts indicating those changes are "tied to" the alleged fraud. (R&R at 59 (quoting Glaser, 772 F. Supp. 2d at 598); see also, e.g., id. at 60 (re: Smith ("Courts routinely hold that without more, resigning after an even shorter tenure than Smith's does not support scienter." (citations omitted))); at 61 (re: Carroll ("Plaintiffs failed to plead independent facts indicating that Carroll's employment change was tied to the alleged fraud, alerted defendants to the alleged fraud, or that Carroll's scienter was otherwise evident." (citation omitted))); at 61 (re: Conte ("Plaintiffs fail to allege sufficient facts to support that Conte acted with scienter in connection with the challenged statements, that his resignation somehow alerted anyone at Hain to the alleged fraud, or that his scienter was otherwise evident.")); at 62 (re: Simon ("Plaintiffs do not explain why Simon's resignation supports an inference of scienter. Under these circumstances, the timing

of Simon's resignation—sixteen months after the Class Period ended—cuts against such an inference." (citations omitted)).) Furthermore, to the extent Plaintiffs further register an objection regarding the personnel changes based upon the Magistrate Judge's purported "independent fact finding and creation of alternative explanations," (Obj. at 27), such an argument fails. Magistrate Judge Dunst was correctly assessing whether the proffered scienter was "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314.

Finally, Plaintiffs' objection that the Magistrate Judge improperly applied the "core operations" doctrine is erroneous. Magistrate Judge Dunst began by recognizing that the majority of courts within the Second Circuit find the doctrine "may provide support for[,] but not an independent basis of[,] scienter," and that courts in this District that have applied the doctrine require the operation at issue to make up nearly all of a company's business or be essential to the company's survival. (See R&R at 64 (first quoting Lipow v. Net1 UEPS Techs., Inc., 131 F. Supp. 3d 144, 163 n.11 (collecting cases); then quoting Francisco, 559 F. Supp. 3d at 320).) Then, giving Plaintiffs the benefit of the assumption that "the U.S. business is essential to Hain's survival because it generates approximately 60% of the Company's net sales," Magistrate Judge Dunst proceeded to find the Plaintiffs' reliance

on the "core operations" doctrine to be "misplaced given that the SAC fails to plead separate facts raising an inference of scienter to be supplemented by the core operations doctrine." (R&R at 64.) Thus, there is no reason to assign error here.

Plaintiffs do not lodge any objections regarding Magistrate Judge Dunst's collective evaluation of the recklessness allegations. (See Obj., in toto.) Nor does the Court find any.

### c. The CWs' Statements

In a general manner, Plaintiffs object to Magistrate Judge Dunst's CW-related findings. (See Obj. at 27-29.) As Defendants put forth, however: "Plaintiffs' Objection makes no specific arguments to rebut the three decisions finding each and every witness unreliable. . . . Plaintiffs do not discuss any particular CW or specific allegation or identify why these CW statements are not too conclusory and vague to be credited." (Response at 16 (citing Obj. at 27-29, further citation omitted).) Moreover, contrary to Plaintiffs' objection, in support of their position, Defendants provide a detailed list highlighting why the CWs' allegations are vague and conclusory. (See id. at 17-18.) The Court agrees with Defendants; the CWs' allegations are too vague, speculative, and conclusory to support an inference of scienter. See, e.g., Francisco v. Abengoa, S.A., 481 F. Supp. 3d 179, 208-09 (S.D.N.Y. 2020) (discrediting "general and second-

hand" confidential witness allegations).   Therefore, no error is had.

### d.   The Company's Scienter

Since the Court finds no error in the Magistrate Judge's recommendations regarding scienter as to the Individual Defendants, that recommendation flows to the Company's scienter: The lack of Individual Defendants' scienter imputes to Hain. Likewise, because Plaintiffs' objections regarding their Section 20(a) Claim are based upon their objections regarding their Rule 10(b) Claim, which the Court has overruled, the Court also overrules Plaintiffs' Section 20(a) Claim-related objections. See, e.g., In re Telefonaktiebolaget LM Ericsson Secs. Litig., No. 22-CV-1167, -- F. Supp. 3d --, 2023 WL 3628244, at *18 (E.D.N.Y. May 24, 2023) (where plaintiff "failed to establish a primary violation of Section 10(b), its Section 20(a) claim necessarily fails and must be dismissed").

### 2.   Dismissal with Prejudice

Finally, regarding Magistrate Judge Dunst's recommendation that the SAC be dismissed with prejudice, Plaintiffs object to same, arguing that the recommendation is based merely upon the passage of time, without the Magistrate Judge having addressed whether amending would be futile.   (Obj. at 30 (quoting Fed. R. Civ. P. 15(a)(2).)   Not so.   In addition to observing the passage of time, Magistrate Judge Dunst also observed

"Plaintiffs had numerous opportunities to plead a case to survive dismissal," that Plaintiffs were afforded the opportunity to file their SAC, and that since the Circuit's Hain decision, "Plaintiffs have neither sought leave to further amend the SAC nor communicated that they possess facts that would bolster it."   (R&R at 67-68.) Hence, without using the word "futile", it is implied by the text of the recommendation that the finding of futility is the basis for the Magistrate Judge's recommendation of dismissal with prejudice.   Moreover, the Court notes: (1) in their Oppositions, Plaintiffs do not request leave to amend; and (2) despite the Magistrate Judge's recommendation of dismissal with prejudice, in their Objection, Plaintiffs fail to articulate any new facts that would rectify the deficiencies of their pleadings.   Cf. Reiner v. Teladoc Health, Inc., No. 18-CV-11603, 2021 WL 4451407, at *17-18 (S.D.N.Y. Sept. 8, 2021) (recommending, where "[i]n a single sentence at the end of their opposition brief, plaintiffs request that, 'if any part of the [subject amended c]omplaint is dismissed,' they be granted leave to replead," but where plaintiff also (1) had already been afforded the opportunity to amend in response to a previous dismissal, and (2) had "provide[d] no information – not even a hint – as to what more they believe they could allege to overcome the deficiencies" of the subject amended complaint, said complaint be dismissed with prejudice), report and recommendation adopted, 2021 WL 4461101 (S.D.N.Y. Sept. 29, 2021).

Thus, here, Magistrate Judge Dunst's recommendation of dismissal with prejudice is proper; Plaintiffs' objection is overruled.

*** 

While some of Plaintiffs' objections are subject to clear error review, even upon _de novo_ review, the Court finds the Magistrate Judge's scienter-related recommendations to be thorough and well-reasoned. Therefore, Plaintiffs' scienter-related objections are overruled. The Court adopts Magistrate Judge Dunst's scienter-related recommendations. In turn, in the absence of the requisite specific scienter allegations, Plaintiffs have failed to plausibly allege their Rule 10(b) and Rule 20(a) Claims, warranting granting the Dismissal Motions.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that:

I.   Plaintiffs' objections are OVERRULED;

II.  The R&R is ADOPTED as to the scienter-related recommendations and the dismissal recommendation;

III. Defendants' Dismissal Motions (ECF Nos. 113, 116) are GRANTED; and

IV.  The Clerk of Court enter judgment accordingly and, thereafter, mark this case CLOSED.

**SO ORDERED.**
 /s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September 29, 2023
          Central Islip, New York

Page 60 of 60